## FLEDDERMANN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 17, 1908.

1. **STREET RAILWAYS: Negligence.** In an action against a street railway company for injuries to the plaintiff caused by a collision of one of the defendant's cars with his wagon, where it was shown that the car approached him from the rear while going over a bridge upon its track and collided with his wagon, and the evidence tended to show the car was running at an excessive speed, and that no warning was given, this was sufficient to submit to the jury the question of the defendant's negligence.

2. ————: **Contributory Negligence.** Likewise, where in such case the evidence tended to show that the plaintiff, before driving upon the bridge, looked and listened to see if a car was approaching and continued to be alert until the collision, but could not hear the rumble of the car on account of the noise of an engine switching under the bridge, the question of contributory negligence was properly submitted to the jury.

3. ————: **Negligence: Proximate Cause.** In such an action, where the instructions excluded any finding for the plaintiff if his own negligence contributed to the injury, it was proper

to instruct the jury that he was entitled to recover if the defendant's negligence directly contributed to his injury and caused it, notwithstanding there were other factors contributing to cause the accident.

4. **PLEADING: Personal Injuries: Special Damages.** In an action for personal injuries, where the petition alleged among other injuries that the plaintiff's leg was broken near the hip and that the injury was permanent, had caused and would cause loss of time from his employment, that he had suffered and would suffer great mental and physical pain, the question whether the plaintiff, on such allegations, could show a shortening of the broken limb, is not one of general or special damages, but whether the general allegations of the petition were broad enough to cover that fact.

5. ———: ———: **General Allegation.** The petition was sufficient to let in evidence that the plaintiff's leg was shortened in consequence of the injury, because the general allegations of breaking the limb, the permanence of the injury and the consequent suffering were sufficient to comprehend it.

Appeal from the St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. M. Pierce* for appellant.

(1) The court erred in refusing to give, at the close of the case, an instruction in the nature of a demurrer to the evidence at the request of the defendant. (a) Because the evidence showed that the plaintiff was guilty of contributory negligence. Brocksmidt v. Railroad, 205 Mo. 444; Holland v. Railroad, 109 S. W. 22; McGauley v. Transit Co., 179 Mo. 583; Theobald v. Transit Co., 190 Mo. 435. (b) Because the proof showed the accident happened otherwise than pleaded and at a different place. Spiro v. Railroad, 102 Mo. App. 250; McCarty v. Hotel Co., 144 Mo. 397; Fuchs v. St. Louis, 167 Mo. 620; Stafford v. Railway, 85 N. W. 1036; Sanguinette v. Railway, 196 Mo. 466; Helm v. Railway, 185 Mo. 222. (2) The court erred in permitting the plaintiff to show that his right leg had been

shortened as a result of his injuries when the shortening had not been pleaded. Moore v. Transit Co., — Mo. — ; 5 Enc. of Pleading and Practice, 748-750; O'Leary v. Rowan, 31 Mo. 117; Brown v. Railroad, 99 Mo. 310; Dunn v. Railroad, 105 Mo. 455; Coontz v. Railroad, 115 Mo. 669.; Slaughter v. Railroad, 116 Mo. 269; Nicholson v. Rogers, 129 Mo. 40; 3 Sedgwick on Damages, sec. 1261; 1 Sutherland on Damages, sec. 418; Chitty on Pleading, 16 Am. Ed. 410, 411; 2 Greenleaf on Evidence (15 Ed.), secs. 88, 89. (3) The court erred in permitting the witnesses Hirschfield and Busche to testify for the plaintiff as to the speed the car was traveling at the time of the accident. Stotler v. Railroad, 200 Mo. 128; Huntley v. Railroad, 38 Mich. 540; Mathieson v. Railway, 97 N. W. 243.

*Scullin & Chopin* for respondent.

(1) The court did not err in sending the case to the jury; the evidence established the negligence of defendant, and appellant's instructions seven, eight, nine and ten amply protected it on the question of contributory negligence. There was no variance in the proof and pleading with regard to the place of the accident. Latson v. Transit Co., 192 Mo. 449; Mertens v. Transit Co., 122 Mo. App. 304; Storage & M. Co. v. Transit Co., 120 Mo. App. 410; Grocer Co. v. Transit Co., 89 Mo. App. 391. (2) There was no error in admitting testimony as to the shortening of plaintiff's limb. The testimony was competent under the allegations, and would have been competent and proper in any event. Coontz v. Railway, 115 Mo. 669; Brown v. Railway, 99 Mo. 310; Trust Co. v. Mursmann, 90 Mo. App. 555; Dooley v. Railway, 36 Mo. App. 381; Burkholder v. Pudrow, 19 Mo. App. 60. (3) There was no error in permitting testimony to enter, from plaintiff's witnesses, with regard to the speed of the car. Stotler v. Railway, 200 Mo. 123; Sludar v. Transit Co., 189 Mo. 107; Walsh v. Railway, 102 Mo. 582; Aston v. Transit Co.,

105 Mo. App. 226; Haworth v. Railway, 94 Mo. App. 224; Covell v. Railway, 82 Mo. App. 180; Salter v. Railway, 59 N. Y. 634; Lawson on Expert and Opinion Evidence (2 Ed.), p. 505.

GOODE, J.—On the morning of October 28, 1904, at about five o'clock, plaintiff, while driving a wagon and team in the city of St. Louis, was run into by a trolley car of the defendant and suffered permanent injury: a broken thigh bone. Verdict went for him, and defendant appealed, not contending the damages awarded were incommensurate with the injury, but that a verdict should have been directed for defendant because plaintiff was proved to have contributed to the accident by his own negligence, and because the proof showed the accident occurred at another place than the one stated in the petition; assigning, also, error in an instruction for plaintiff, which permitted a recovery if the jury believed the speed of the car was higher than was prudent under the circumstances, and believed, further, the excessive speed "contributed to and was the direct cause of the collision." Other complaints are that plaintiff was permitted to prove his leg had been shortened by the fracture, when this fact was not alleged for special damages, and that the court permitted two witnesses who did not qualify as experts to testify regarding the speed of the car. The accident happened near the north end of Twelfth street bridge, a structure twenty-seven feet wide and twelve hundred feet long, which rises above and extends over various steam railroad tracks. The transit company operates cars over this bridge on two tracks, of which the west is used by south-bound cars and the east by north-bound. The bridge is built, in the main, of timbers, but with iron trusses. The surface of the bridge is level most of its length, but descends, in a gentle slope from a point two hundred and fifty feet south of its northern terminus, to the street. Plaintiff was employed by the

Obert Brewing Company as driver of a wagon. About daybreak he drove on the bridge at its southern end near Gratiot street, and thence followed the east track northward until he was close to the north end, when the car overtook him, struck the rear wheel of the wagon and knocked him from the wagon seat to the street, where he lay unconscious. The roadbed or driveway of the bridge, is about nineteen feet, three inches wide. On either side is a space two feet four inches wide from the sidewalk to the first rail of the car track, the intermediate space being taken up by the two tracks, each four feet ten inches wide with a space between them of the same width. A person could hardly drive across the bridge without proceeding on one track or the other, plaintiff said, and he was traveling along the east track, the one on which cars ran northward, the way he was going. By driving on this track he avoided meeting south-bound cars, as he would have done had he used the west track.

1. Plaintiff swore that when he drove on the bridge at Gratiot street he looked and listened for cars, and neither heard nor saw any; again looked some two hundred feet from where the collision occurred, and was listening all the time, but never heard the rumble of a car, or the sound of a warning gong. Some witnesses who were on the car, testified they heard no warning given, though one of them swore he stepped to the front door of the car just prior to the collision and saw plaintiff's wagon plainly visible ahead. Witnesses testified the speed of the car at the time of the collision was thirty miles an hour, and that the motorman, besides giving no warning, did not slacken speed after he must have seen a collision was impending. We discern no merit in the contention that the court should have directed a verdict for defendant, either on the theory of lack of negligence on the part of defendant, or concurrence of negligence on the part of plaintiff. The speed at which the car was running

was excessive, if some testimony is to be believed, as there was neglect in not warning plaintiff of the car's approach, if other is to be believed. These are the acts of negligence on which a recovery was submitted. According to plaintiff's statements he used care, both in looking and listening, but nevertheless failed to detect the car's approach. His not hearing its rumble is accounted for by the noise of trains and engines switching on the tracks under the bridge, and drowning the sound of the trolley car as it came up behind. It is contended for defendant, plaintiff was in a mood of abstraction when he should have been attentive, as there was noise below which rendered it difficult to hear an approaching trolley car. The testimony of plaintiff shows he was on the watch, had looked twice to the rear for a car and had listened constantly. He might have heard the bell if it had been rung to warn him, even though he did not hear the rumble of the car; a sound which would be confused more readily with the rumble of trains below than would the clang of the gong. In our opinion these matters were all for the jury on conflicting testimony. The case of McGauley v. Transit Co., 179 Mo. 583, and Theobald v. Transit Co., 191 Mo. 395, cited for defendant, are not in point. We are familiar with those cases, but do not care to digest their facts in this opinion, and will say simply the plaintiffs were nonsuited for special circumstances which do not appear in the present case.

2. The instruction of which complaint is made on the authority of Hof v. Transit Co., 213 Mo. 445, falls outside the principle of said decision. The instruction condemned in the Hof case allowed a verdict for the plaintiff if the defendant's negligence directly "contributed to cause the collision;" whereas the present instruction required the jury to find the negligence of defendant as specified, not only contributed to the collision, but was the direct cause of it. This instruction, and several given for defendant, told the jury plaintiff

could not recover unless they found he was in the exercise of due care at the time of the collision. The thirteenth charge for defendant said if plaintiff's negligence in any degree directly contributed to cause his injury, he could not recover and the verdict must be for defendant. A finding for plaintiff was excluded if his own negligence contributed to cause his injury; and he was entitled to recover if defendant's negligence directly contributed to and caused it, though some adventitious fact, not constituting negligence of plaintiff, may have had something to do with the accident. In other words, if defendant's alleged tort directly contributed to the occurrence, and no negligence of plaintiff was influential in bringing it about, his cause was good, though there was another contributing factor; perchance, the noise of trains in the valley. A defendant cannot get rid of liability for his own tort which proximately and directly caused an injury and without which the injury would not have happened, because some natural force, or the activity of third persons, exerted an influence on the event. [Brink v. Railroad, 17 Mo. App. 177; Sanderson v. Holland, 39 Mo. App. 233; Minster v. Railroad, 53 Mo. App. 276; Grier v. Railroad, 108 Mo. App. 565, 570; Nagel v. Railroad, 75 Mo. 653; Haney v. Kansas City, 94 Mo. 334; Benjamin v. Railroad, 133 Mo. 274; Brash v. St. Louis, 161 Mo. 433.]

3. Plaintiff's injuries were thus alleged: his body was bruised, right arm fractured and right leg broken near the hip; all these injuries were permanent, had caused and would cause him loss of time from his employment, and he had suffered and would suffer great mental and physical pain, and expend large sums for physicians and medicines. These statements are challenged as inadequate to let in proof the leg was shortened by the fracture, because such a consequence of the break was not necessary in the sense of being inevitable, and defendant could not be charged with notice

compensation would be demanded for it unless the petition said so. Whether the shortening of the limb was general or special damage, depends, not on whether it was a necessary sequel of the fracture, but on whether it is taken in law to be a necessary consequence of the tortious acts alleged against defendant, for the reason that a like result so usually follows such acts as to raise the legal presumption it followed in a particular case. [2 Sutherland, Damages (3 Ed.), 418, et seq.; 3 Sedgwick, Damages (8 Ed.), sec. 1261; 1 Chitty, Pleadings (16 Am. Ed.), 411; 5 Ency. Pl. and Pr., 717, et seq.; O'Leary v. Rowan, 31 Mo. 117; Brown v. Railroad, 99 Mo. 310; Nicholson v. Rogers, 129 Mo. 136.] We think the question before us is not, as counsel argue, whether the shortening of the limb constitutes, in legal nomenclature, general or special damages, but whether plaintiff's injuries are stated with enough breadth and detail to admit proof of that injury. We judge from cases which have been cited, that this question has been confused with the question of whether said injury was the direct and proximate result of the accident, for which plaintiff is entitled to compensation, or a remote result for which he would not be even if specifically stated. [1 Sutherland, Damages, sec. 55; 8 Am. and Eng. Ency. Law (2 Ed.), 561, et seq.; Gilliland v. Railroad, 19 Mo. App. 411; Bradford v. Railroad, 64 Mo. App. 475; Seckinger v. Mfg. Co., 129 Mo. 590, 603.] What harmful results will be classed, in actions for personal injuries, as general damages and unnecessary to be averred, has been the source of conflicting decisions. In some States medical attention, nursing, loss of earnings and diminished capacity to attend to business are so regarded. [5 Am. Ency. Pl. and Pr., pp. 753, 755.] Each of those items is special damage in this State (Coontz v. Railroad, 115 Mo. 669; Smith v. Railroad, 108 Mo. 243; Sullivan v. Railroad, 97 Mo. 113), and without saying no damage except physical and mental suffering

will be presumed from a tortious personal injury, we call to mind no decision by an appellate court of Missouri in which other damage has been treated as general. Those two species of suffering are so commonly incident to such an occurrence that they are accepted as a necessary result, the law presumes they ensued, and a defendant must anticipate a demand for compensation on account of them. [Brown v. Railroad, 99 Mo. 310, 318.] The shortening of plaintiff's leg is direct but special damage, and is not legally implied; but it does not thence follow plaintiff was bound to say, in so many words, his leg was shortened by the accident, in order to obtain compensation for this damage. He averred specifically, fracture of his thigh bone, that said injury was permanent, had caused and would cause him loss of time, and that he had suffered and would suffer great mental and physical pain. These statements sufficed to admit proof the limb was shortened, without stating it as the particular permanent injury which followed the fracture of the thigh. The permanent result might have been sciatica, withering of the muscles and tissues, or, as actually happened, a diminution of length. The question in hand must be solved on the authority of precedents wherein similar disputed evidence, was considered in comparison with the averments to which its relevancy was asserted, and the courts passed on the point of what averments were definite enough to admit evidence of some particular injury. Most opinions so treat the competency of such evidence, but some make the decision turn on whether the injury sought to be proved was a direct or a remote result of the tort. In Railroad v. Harris, 122 U. S. 597, the defendant in error had sued for damages consequent on the company's servant shooting him through the hips. He was permitted to prove sexual impotency, and the jury to consider it in estimating the compensatory damages, though it was not alleged in the declaration. These rulings were assigned for error, but

the Supreme Court of the United States said as the
injury had resulted directly and proximately from the
wound, the evidence was admissible and the jury might
give damages to compensate. The reason assigned in
the opinion indicates the court so held because the fact
to be proved followed directly, not remotely, from the
wound through the hips, and did not consider the ques-
tion with reference to the distinction between general
and special damages. So in Tyson v. Booth, 100 Mass.
258, wherein it was alleged the plaintiff had been shot
in the eye, leg, arm and abdomen, he was allowed dam-
ages for periodic fits due directly to the injury, without
a specific averment. The subject in hand was clarified
by the opinion of Justice CAMPBELL in Johnson v.
McKee, 27 Mich. 471; wherein the plaintiff sued for
wounds tortiously inflicted in the face, head, body and
cartilage of the nose, alleging he became greatly hurt,
bruised, wounded, sick, sore and crippled and remained
so for a long time. The point was whether those aver-
ments permitted proof of urinary difficulty caused by
the bruise. Judge CAMPBELL said in substance, that as
the defendant was apprised by the declaration, damages
were sought for sickness and disorder caused by the
assault, he was bound to expect evidence of any sick-
ness, the origin or aggravation of which could be traced
to the tort. In Montgomery v. Railroad, 103 Mich. 46,
29 L. R. A. 287, evidence of injury to a lung and con-
sumption following a railroad accident, was received
on allegations the plaintiff was seriously hurt, wound-
ed and crippled; his eyes, face and head bruised; some
of his teeth loosened; lips cut; arms and spine bruised
and sprained, and that those injuries were permanent,
lasting and incurable. The court said the rule pre-
scribed in Johnson v. McKee (27 Mich. 471), did not
require averment of all the physical injuries sustained
by a defendant's wrong, or which might have resulted
from or have been aggravated by it, even though they
did not flow necessarily from it, if they would naturally

ensue.  This remark is not uniformly sustained as a statement of the rule; for most courts hold if an injury for which damages are demanded, is such an one as follows the alleged tort only naturally and not neces· sarily (*i. e.* not meaning inevitably but with a high degree of frequency) it must be alleged specifically. What particularity of statement will satisfy the re· quirement of special pleading, is the most controverted point.  In Canfield v. City of Jackson, 112 Mich. 120, it appeared the plaintiff had been hurt by a fall on a defective sidewalk.  She proved withering of the flesh about the thigh and hip induced by partial paralysis, under a declaration alleging her spine was permanently injured, and she was otherwise severely hurt and became sick, lame and disabled.  This evidence was held relevant.  In Beth v. Railroad, 119 Mich. 512, it was decided a disease of the sciatic nerve might be shown under a declaration of permanent injuries to the hip joint, pelvis and thigh.  In Fye v. Chapin, 121 Mich. 675, an action for injuries caused by a dog, the declaration said the plaintiff was injured for life; her nervous system permanently hurt from the shock; that she became and was sick, suffered great bodily and mental anguish and would continually suffer it; that before she was injured she was a sound and healthy person, but became and was permanently injured, her whole nervous system wrecked and her blood poisoned and contaminated.  These averments were ruled to justify the reception of evidence to prove epilepsy resulted; the ruling being put on the averment of permanent injuries.  In Railroad v. Griffin, 80 Fed. Rep. 278, the declaration alleged nervous prostration, and a sensation of numbness and pain in certain parts of the body as results of the accident, and it was held injurious effects to the parts of the body not mentioned in the declaration, might be shown.  The petition, indeed, said the numbness and pain were felt in other parts of

134 App—14

the body as well as in those named; but the court said evidence touching the condition of the nerves of the leg would have been proper without this statement. In Meyers v. Railroad, 60 N. Y. Supp. 422, the plaintiff gave evidence of a permanent disorder of his heart under an allegation that his head, sides and ribs were permanently injured, and this was held proper. In Tobin v. Fairport, 12 N. Y. Supp. 224, on averments that the body and limbs of plaintiff were bruised, that she suffered great bodily injury and was made sick, sore and lame, evidence of a subsequent miscarriage was allowed. The court said the allegation that the plaintiff was made sick by the accident, was enough to let her prove any sickness which naturally grew out of the injury. In Railroad v. Ward, 135 Ill. 511, the complaint said plaintiff was hurt, wounded and divers bones broken; that she was grievously injured and became sick, sore, etc. and the injuries were such that she might not recover from them during her life. Evidence was let in that the reproductive organs were impaired causing hindrance to marriage. In Wilbur v. Railroad, 110 Mo. App. 689, the petition alleged plaintiff "was greatly injured in body and mind and suffered great permanent injury." On this allegation the question arose whether testimony might be given of various internal bodily injuries, suffered in consequence of the plaintiff being thrown from a car against a fence, and thence to the ground, in a collision. That case is like this one, but the statement of injury was less broad and particular. The court said all constitutive facts must be alleged, but this did not require the character of the particular wounds and hurts which naturally resulted from the negligent act to be stated; that evidence of particular bodily injuries received in the wreck, were admissible under the general averment of injury to the body; especially as defendant had not filed a motion for details of the injury. In Thompson v. Railroad, 111 Mo.

465, the petition averred injuries to plaintiff's hip and teeth, serious nervous shock, physical and mental anguish and maiming and disfigurement for life. On those averments it was held evidence to show uterine disorder was incompetent. It will be observed that the parts of the body alleged to have been hurt were remote from the womb and the injuries enumerated tended to exclude, rather than suggest the notion of injury to said organ. The text works we have cited contain many precedents, other than those noticed above, of the same tenor.

4. We find no error in admitting the testimony of the witnesses regarding the speed of the car. These men testified they were in the habit for years of watching cars and estimating their speed. [Stotler v. Railroad, 200 Mo. 107.]

Judgment affirmed. All concur.